IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

4:09-CV-79-D

| | |
|---|---|
| AVON RICHARDSON, JR., ) | |
| ) | |
| Claimant/Plaintiff, ) | |
| ) | |
| v. ) | **MEMORANDUM AND** |
| ) | **RECOMMENDATION** |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

This matter is before the Court on the parties' cross motions for judgment on the pleadings. Avon Richardson, Jr. ("Claimant") seeks judicial review of the Commissioner's denial of his application for disability insurance benefits ("DIB"). After a thorough review of the record and consideration of the briefs submitted by counsel, the Court recommends denying Claimant's Motion for Judgment on the Pleadings [DE-18] and granting the Commissioner's Motion for Judgment on the Pleadings [DE-19].

## STATEMENT OF THE CASE

On April 7, 2005, Claimant filed his application for DIB, alleging disability beginning on September 23, 2004. (R. 80.) Claimant alleged disability due to chronic back pain and depression. (R. 19.) His application was denied initially, and upon reconsideration. (R. 66, 71.) Claimant then requested a hearing before an Administrative Law Judge ("ALJ"), which took place on November 2, 2007. (R. 520-43.) The ALJ issued a decision denying Claimant's application on January 24, 2008. (R. 23-32.)

The Appeals Council denied Claimant's request for review on April 20, 2009, (R. 6-10) rendering the ALJ's decision a "final decision" for purposes of judicial review. See Walls v. Barnhart, 296 F.3d 287, 289 (4th Cir. 2002) (noting that when the Appeals Council denies a request for review, the underlying decision by the ALJ becomes the agency's final decision for purposes of appeal). Claimant timely commenced the instant action pursuant to 42 U.S.C. § 405(g).

## DISCUSSION

**I.     The Standard of Review and Social Security Framework**

The scope of judicial review of a final decision regarding disability benefits under the Social Security Act, 42 U.S.C. § 405(g), is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. Walls, 296 F.3d at 290; 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). This Court must not weigh the evidence, as it lacks the authority to substitute its judgment for that of the Commissioner. Walls, 296 F.3d at 290. Thus, in determining whether substantial evidence supports the Commissioner's decision, the Court's review is limited to whether the ALJ analyzed all of the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. See Sterling Smokeless Coal Co. v. Akers, 131F.3d 438, 439-40 (4th Cir. 1997).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process to be followed in a disability case. See 20 C.F.R. §§ 404.1520 and 416.920. At step one, if the claimant is currently engaged in substantial gainful activity, the claim is denied. If the claimant is not engaged in substantial gainful activity, then at step two the ALJ determines whether the claimant has a severe impairment or combination of impairments that significantly limit him or her from performing basic work activities. If no severe impairment is found, the claim is denied. If the claimant has a severe impairment, at step three the ALJ determines whether the claimant's impairment meets or equals the requirements of one of the Listings of Impairments ("Listing"), 20 C.F.R. § 404, Subpart P, App. 1. If the impairment meets or equals a Listing, the person is disabled per se. If the impairment does not meet or equal a Listing, at step four the claimant's residual functional capacity ("RFC") is assessed to determine if the claimant can perform his or her past work despite the impairment; if so, the claim is denied. However, if the claimant cannot perform his or her past relevant work, at step five the burden shifts to the Commissioner to show that the claimant, based on his or her age, education, work experience and RFC, can perform other substantial gainful work. The Commissioner often attempts to carry his burden through the testimony of a vocational expert ("VE"), who testifies as to jobs available in the economy based on the characteristics of the claimant.

In this case, Claimant alleges the following errors: (1) New and material evidence presented to the Appeals Council warrants a remand; (2) the ALJ erred in concluding

3

that Claimant's testimony was not entirely credible; and (3) the ALJ erred in concluding that Claimant had the RFC to perform light work.

## II.     The ALJ's Findings

The ALJ proceeded through the five-step sequential evaluation process as set forth in 20 C.F.R. §§ 404.1520 and 416.920. (R. 23-32.) The ALJ first found that Claimant had not engaged in substantial gainful activity since September 23, 2004, the alleged onset date. (R. 25); see 20 C.F.R. §§ 404.1520(b) & 416.920(b). The ALJ then proceeded to step two and found that Claimant suffered from the severe impairments of obesity, depression and degenerative disc disease. (R. 25); see 20 C.F.R. §§ 404.1520(c) & 416.920(c). However, at step three the ALJ determined that Claimant's impairments did not meet or medically equal one of the impairments listed in 20 C.F.R. § 404, Subpart P, App. 1. (R. 25); see 20 C.F.R. §§ 404.1520(d)-(e) & 416.920(d)-(e). Next, the ALJ determined – based on all the evidence in the record, including medical records, and Claimant's subjective complaints – that Claimant had the RFC to perform light work. (R. 26-30); see 20 C.F.R. §§ 404.1520(e) & 416.920(e). At step four, the ALJ found that Claimant was unable to perform his past relevant work as a doffer, livestock worker, tire sorter, furniture packer and carpenter helper. (R. 30); see 20 C.F.R. 404.1565 & 416.965. At step five, the ALJ determined that based on Claimant's age, education, work experience and RFC, he could perform other jobs that exist in significant numbers in the national economy. (R. 31); see 20 C.F.R. §§ 404.1560(c) & 416.960(c). As a result, the ALJ found that Claimant was not under a "disability," as

defined in the Social Security Act, from September 23, 2004, through the date of his decision. (R. 32); see 20 C.F.R. §§ 404.1520(g) & 416.920(g).

## III. The Administrative Hearing

### A. Claimant's Testimony

Claimant testified at his administrative hearing held on November 2, 2007, to the following (R. 520-43): He was 44 years old at the time of the hearing. (R. 524.) He attended school through the tenth grade. (Id.) He lives with his son, who was 16 years old at the time of the hearing. (Id.) Claimant has a driver's license, but only drives approximately twice a month. (Id.) He reads the Bible on occasion. (R. 525.)

He is not currently working, and has not worked since his alleged disability onset date of September 23, 2004. (Id.) He last worked at the Haliwa Saponi Tribal Center in Hollister, NC for six or seven months as a maintenance worker. (Id.) Before working at the Tribal Center, he was a tire separator at Firestone and before he worked at Firestone, Claimant packed furniture at Huns Furniture Factory. (R. 526.) Claimant's longest terms of employment were as a production technician on a hog farm and a construction worker's assistant. (R. 527.)

Claimant suffers from chest pain and was hospitalized for this problem in March 2007. (R. 528.) He has lower back pain. (R. 530.) He has had an epidural shot, which helped for a few days, but then the pain came back. (Id.) Claimant uses a cane, and had for about eight months prior to his hearing. (Id.) He got the cane from his sister. (R. 530-31.) Claimant saw a doctor who recommended that he get back surgery, but he did not get the surgery because he could not afford it. (R. 538.) Claimant also suffers

5

pain in his left leg from a pin that was placed there after he was in a car accident at the age of six months. (R. 531.) He has not received any recent treatment for his leg. (Id.)

Claimant also suffers from stress and depression, which makes it difficult for him to concentrate for any length of time. (Id.) Claimant does not see a psychiatrist or psychologist for his depression and stress. (R. 532.) Claimant gets easily confused, has problems with his memory, and does not have motivation to finish tasks. (R. 535-36.)

Claimant takes medication for his stress and depression, such as Seroquel and Trazodone. (R. 529.) Claimant also takes Advil and Tylenol to alleviate his back and leg pain. (Id.) Claimant's back pain is constant and the medication does not help. (R. 532.) Claimant has to lie down to give himself some pain relief; he lies down with an ice pack about fifty percent of the time. (R. 533.) Claimant uses a walker when he goes shopping and cannot walk more than 50 feet without stopping. (Id.) He can stand for about five or ten minutes before he has to sit down. (R. 534.) He can sit no more than fifteen minutes before he has to get up. (Id.) Claimant has trouble lifting and carrying objects and can only carry five pounds without making the pain worse. (R. 534-35.)

Claimant is able to do a little bit of cleaning, such as sweeping the floor and washing clothes. (R. 535.) He can cut a little bit of grass, but most of the time his son cuts the grass. (Id.) Claimant tries to attend church twice a month and attends prayer meetings. (Id.) He has a lot of friends in church. (Id.) Claimant has to stand and sit throughout the hour and a half church service because of the pain. (R. 539.)

6

## B. Vocational Expert Testimony

A vocational expert, Kimberly Engler, testified at Claimant's hearing. (R. 539-42.) The VE noted that Claimant's past jobs as a doffer and livestock worker were classified as heavy, unskilled work; his job as a tire sorter was classified as light, semiskilled work; his job as a furniture labeler was classified as medium, unskilled work; and his job as a carpenter helper was classified as heavy, semiskilled work. (R. 540.)

The ALJ then posed the following hypothetical to the VE:

> I want you to assume a hypothetical individual of the same age, education and work background as the Claimant and I want you to further assume this hypothetical individual is limited to the performance of light work, however, he would be further limited to simple, routine, repetitive, non-production [tasks]. Can you discuss any jobs the hypothetical individual can perform?

(Id.)

The VE answered in the affirmative. She noted that such an individual would be able to perform jobs in the light, unskilled category of work. (Id.) She concluded that such an individual would be able to work as a shipping and receiving weigher, (Dictionary of Occupational Title ("DOT") number 222.387-074), photocopier operator (DOT number 207.685-014), and mail clerk (DOT number 209.687-026). (R. 540-41.) The ALJ then asked the VE whether a hypothetical individual with all of the limitations described by Claimant could perform work in the national economy. The VE answered in the negative. (R. 541.)

## IV. Claimant's Arguments

### A. The Appeals Council Properly Considered Claimant's New Evidence

Claimant first argues that the Appeals Council erred by denying review of his request for benefits after Claimant submitted additional medical evidence. Cl.'s Mem. at 10-13. After the ALJ rendered his decision, but before the Appeals Council denied Claimant's request for review of the decision, Claimant sent to the Appeals Council additional evidence regarding his back pain and depression.

To remand a case to the Commissioner on the basis of new evidence, a claimant must establish that: (1) the evidence is new such that it is "relevant to the determination of disability at the time the application was first filed and not merely cumulative," Mitchell v. Schweiker, 699 F.2d 185, 188 (4th Cir. 1983); (2) the evidence is material such that the Commissioner's decision "might reasonably have been different" had he or she had this new evidence, King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979); and (3) the plaintiff must make "at least a general showing of the nature" of the new evidence to the reviewing court, King, 599 F.2d at 599; see generally Borders v. Heckler, 777 F.2d 954, 955 (4th Cir. 1985), superseded by statute, 42 U.S.C. § 405(g), as recognized by Wilkins v. Sec'y, Dept. of Health and Human Servs., 925 F.2d 769 (4th Cir. 1991) (discussing the relevant criteria for remanding back to the Commissioner based on new evidence)[1]. Claimant submitted the medical records to the Appeals Council and this Court, accordingly, he has established the general nature

---

[1] When the new evidence is presented to the district court for the first time, and was not presented to the Appeals Council, then an additional showing of good cause for not submitting the evidence when the claim was before the Commissioner is required. 42 U.S.C. § 405(g). However, good cause is not required when the Claimant presents the new evidence to the Appeals Council. See 20 C.F.R. §§ 404.970, 416.1470.

8

of the new evidence, satisfying the third step in the analysis. As a result, Claimant need show only that the medical evidence is new and material.

The additional evidence that Claimant submitted supports his claim of depression. He provided medical records that show that he voluntarily admitted himself to the Woodside Psychiatric Unit of Halifax Regional Medical Center from July 31, 2008 to August 6, 2008. (R. 451, 456-59.) He was diagnosed with major depressive disorder, recurrent and severe with psychotic features. (Id.) In addition, on November 18, 2008, Claimant underwent a comprehensive psychiatric evaluation and was diagnosed with major depressive disorder with psychotic features. (R. 512-13.)

Claimant asserts that the additional medical evidence shows that he meets the criteria of Listing 12.04, which pertains to affective disorders. Cl.'s Mem. at 12. The Court disagrees. It is the opinion of the Court that Claimant's additional evidence is duplicative of evidence that the ALJ already considered before rendering his decision.

The ALJ had evidence of Claimant's depression when he issued his decision denying benefits. Specifically, the ALJ noted that Dr. Anthony Carraway, M.D., performed a consultative psychological evaluation of Claimant in January 2007. (R. 28.) The ALJ stated that "Dr. Carraway's diagnostic impression was mood disorder; anxiety disorder and a Global Assessment of Functioning ("GAF") of 60,[2] which is indicative of minimal to moderate difficulty in social or occupational functioning." (Id.) The ALJ credited this medical evidence and concluded that Claimant suffered from the severe

---

[2] Dr. Carraway actually diagnosed Claimant with a GAF of 64, not 60. A GAF level of 51-60 represents moderate symptoms and a GAF of 61-70 represents mild symptoms. See Diagnostic and Statistical Manual of Mental Disorders (DSM-IV) (American Psychiatric Assocation, 4th ed. 1994) at 32. However, under a GAF of either 60 or 64, an individual is able to work, as even moderate symptoms do not prohibit a person from having a job.

9

impairment of depression, but did not find that this impairment rose to the level of a Listing. (R. 25.)

Claimant asserts that the additional evidence shows that he meets criteria B of Listing 12.04. Listing 12.04 requires the following:

> Affective Disorders: characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome. Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation.
>
> The required level of severity for these disorders is met when the requirements in both A and B are satisfied . . . .
>> A. Medically documented persistence, either continuous or intermittent, or one of the following:
>>   1. Depressive syndrome characterized by at least four of the following
>>       a. Anhedonia or pervasive loss of interest in almost all activities; or
>>       b. Appetite disturbance with change in weight; or
>>       c. Sleep disturbance; or
>>       d. Psychomotor agitation or retardation; or
>>       e. Decreased energy; or
>>       f. Feelings of guilt or worthlessness; or
>>       g. Difficulty concentrating or thinking; or
>>       h. Thoughts of suicide; or
>>       i. Hallucinations, delusions, or paranoid thinking; or
> . . . AND
>> B. Resulting in at least two of the following:
>>   1. Marked restriction of activities of daily living; or
>>   2. Marked difficulties in maintaining social functioning;
>>   3. Marked difficulties maintaining concentration, persistence, or pace; or
>>   4. Repeated episodes of decompensation, each of extended duration
>
> . . . .

20 C.F.R. § 404, Subpart P, App. 1, 12.04.

10

Case 4:09-cv-00079-D   Document 25   Filed 04/14/10   Page 10 of 15

Specifically, Claimant asserts that the additional medical evidence establishes that he suffers from marked difficulties in maintaining social functioning and marked difficulties in maintaining concentration, persistence and pace. However, the additional evidence does not support this contention. With regard to Claimant's ability to maintain social functioning, the evidence from Claimant's hospital shows that he was "interacting well, cheerful, not presenting any behavioral or management problems." (R. 453.) This is in accordance with Claimant's hearing testimony in which he stated that he has a "lot of friends in church." (R. 535.) With regard to Claimant's ability to maintain concentration, persistence and pace, the medical notes when Claimant was discharged from the hospital indicate that he was alert and oriented, had intact memory, and that his insight and judgment were good. (R. 451.) Also, the day before he was discharged, the medical notes indicate that he had good attention and concentration. (R. 452.) Finally, the comprehensive psychiatric evaluation notes that Claimant was "awake and alert, oriented x3 and fluently conversant." (R. 511.) Accordingly, it is the Court's opinion that the additional medical records that Claimant provided are not new, because they are cumulative, and they are not material, as the ALJ's decision would not reasonably have been different had he had this evidence. Therefore, the Appeals Council did not err by denying review of the ALJ's decision finding Claimant not disabled.

### B. The ALJ Did Not Err by Finding Claimant Not Fully Credible

Claimant argues that substantial evidence does not support the ALJ's findings that his allegations of pain and functional restrictions are not fully credible. The Court disagrees.

In assessing a claimant's credibility, the ALJ must follow a two step process. First the ALJ must determine whether the claimant's medically determinable impairments could reasonably cause the alleged symptoms. Craig v. Chater, 76 F.3d 585, 594-95 (4th Cir. 1996). Next, the ALJ must evaluate the claimant's statements regarding those symptoms. Id. at 595. The Social Security rulings require that an ALJ's decision "contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." S.S.R. 96-7p. When an ALJ fails to specify the reasons for an adverse credibility determination, remand is appropriate. See Ivey v. Barnhart, 393 F.Supp.2d 387, 390 (E.D.N.C. 2005) (concluding that remand was appropriate because the ALJ failed to adequately explain the basis of his credibility determination).

Here, the ALJ found that "claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely credible." (R. 29.) The ALJ provided specific reasons for his adverse credibility finding. He summarized Claimant's medical records, which indicated that his

12

back pain is not as debilitating as Claimant asserts. (R. 30.) For instance, the ALJ noted that Dr. Joseph Roberts observed that Claimant's gait was within normal limits and he had 5/5 strength, despite back pain. (Id.) In addition, treatment notes related to Claimant's back pain in June 2004 indicated that the doctor did not believe that Claimant's symptoms were related to the very small herniated disc confirmed by the MRI. (Id.) Also, the ALJ noted that a consultative examiner concluded that despite back pain, Claimant could perform all activities of daily living. (Id.) As previously discussed, the ALJ also noted Dr. Carraway's evaluation, which produced a GAF consistent with the ability to work. (Id.)

Claimant, in his testimony, asserted that he has constant back pain and must lie down for half of the day, is unable to walk more than fifty feet and can stand for only ten minutes before needing to sit down. (R. 530-34.) Claimant may rely on subjective evidence of pain to support the second step of the credibility assessment. However, the ALJ need not ignore other objective evidence that contradicts Claimant's subjective complaints. Hines v. Barnhart, 453 F.3d 559, 565 n.3 (4th Cir. 2006) (citing Craig, 76 F.3d at 595). The ALJ thoroughly explained his credibility analysis. The fact that Claimant can point to other evidence in the record that supports his claimed impairments and the alleged severity of his pain does not diminish the ALJ's analysis. When conflicting evidence is presented, it is up to the ALJ to resolve those inconsistencies. Hays v Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). It is not the responsibility of this Court to determine the weight of the evidence. Id. Here, the ALJ pointed to evidence in the record to support his conclusion that Claimant was not totally

credible. Therefore, he satisfied his duty under the applicable regulations and law and did not err in finding Claimant not fully credible.

### C. The ALJ Sufficiently Determined Claimant's RFC

Claimant argues that the ALJ erred in concluding that he had the RFC to perform light work involving simple, routine, repetitive tasks that is non-production in nature. The Court disagrees.

In determining his RFC, the ALJ considered all of Claimant's symptoms, including his testimony regarding pain, to the extent that such symptoms were consistent with objective medical and other evidence. (R. 26.) The ALJ noted his reliance on the requirements of 20 C.F.R. §§ 404.1529, and Social Security Rulings ("SSRs") 96-4p and 96-7p, in reviewing Claimant's alleged symptoms. Additionally, the ALJ considered opinion evidence in accordance with 20 C.F.R. §§ 404.1527 and SSRs 96-2p, 96-5p, 96-6p, and 06-3p.

Specifically, the ALJ reviewed the medical evidence in detail. (R. 27-30.) See generally DeLoatche v. Heckler, 715 F.2d 148, 150 (4th Cir. 1983) (concluding that an ALJ must analyze the medical evidence in determining an appropriate RFC). In June 2005, a consultative examiner found no evidence indicating physiological pain and no muscle weakness. (R. 27-28.) In addition, Dr. Carraway noted only minimal impairment in Claimant's attention, concentration, and ability to understand, retain and perform instructions. (R. 28.) Accordingly, the ALJ fully addressed each of Claimant's alleged impairments, including his back pain and depression. (Id.) However, as previously

14

discussed, the ALJ did not find Claimant's testimony regarding his functional limitations to be fully credible. (R. 29-30.)

In making his RFC assessment, the ALJ considered Claimant's physical abilities and concluded that he is only able to perform light work. (R. 30.) Also, the ALJ considered Claimant's mental abilities and limited him to unskilled work, requiring simple, routine and repetitive tasks in a non-production setting. (Id.) Accordingly, the ALJ's RFC determination is supported by substantial evidence.

## CONCLUSION

The undersigned **RECOMMENDS** that Claimant's motion for judgment on the pleadings be **DENIED**, and that the Commissioner's motion for judgment on the pleadings be **GRANTED**. The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have fourteen (14) days after receiving it to file written objections. Failure to file timely written objections bars or may bar an aggrieved party from receiving a de novo review by the District Court on an issue covered in the Report and, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

This the 13TH day of April, 2010.

DAVID W. DANIEL
United States Magistrate Judge